# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HARRY P. EASTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-017-RAW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Harry P. Eastman (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on February 7, 1971 and was 40 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a floor layer and carpet installer. Claimant alleges an inability to work beginning May 15, 2008 due to limitations resulting from bipolar disorder,

depression, and deterioration of his back.

**Procedural History**

On April 13, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on May 6, 2010, Claimant filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 7, 2011, an administrative hearing was held before ALJ Trace Baldwin in McAlester, Oklahoma. On October 14, 2011, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on December 16, 2011. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of medium work with some limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to

properly assess Claimant's credibility; (2) relying upon a non-examining state agency doctor's opinion regarding Claimant's physical RFC; and (3) improperly rejecting a physician's opinion on Claimant's mental RFC.

### Credibility Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, hepatitis C, mood disorder, NOS, amphetamine abuse, cannabis abuse, alcohol abuse, personality disorder, NOS, and bipolar disorder. (Tr. 11). In making his RFC evaluation, the ALJ found Claimant could lift and/or carry at least fifty pounds occasionally and at least twenty-five pounds frequently, stand and/or walk for at least six hours in an eight hour workday, sit for at least six hours in an eight hour workday, had the unlimited ability to push/pull including operation of hand/foot controls, has not postural, visual, manipulative, communicative or environmental limitations. He was found to be able to perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, cannot relate to the general public, but can adapt to a work situation. (Tr. 17).

After consultation with a vocational expert, the ALJ found

5

Claimant could perform the representative jobs of press machine operator and dry cleaner helper. (Tr. 24). As a result, the ALJ concluded Claimant was not disabled during the relevant period. (Tr. 25).

On March 24, 2006, Claimant was treated by Dr. David Trent for low back pain, difficulty walking, decreased range of motion, stating he could not bend over with no radiation, and headache. (Tr. 218). An MRI revealed spondylolysis at L5-S1 with associated grade I spondylolisthesis and early degenerative changes at L5-S1. (Tr. 216). Dr. Trent prescribed medication for the condition. (Tr. 218).

On June 15 and 25, 2007, Claimant received a psychiatric evaluation from Dr. Kenneth Foster. Dr. Foster diagnosed Claimant with Bipolar I Disorder, Most Recent Episode Depressed, Severe With Psychotic Features, Posttraumatic Stress Disorder, and Reactive Attachment Disorder of Infancy. Dr. Foster prescribed medication for the conditions. (Tr. 221-24).

On January 22, 2007, Claimant was attended by Dr. Trent complaining of lower back pain. Dr. Trent diagnosed chronic back pain from spondylolithesis at L5-S1. Additional medication was prescribed. (Tr. 411). On June 14, 2007, Claimant was seen by Dr. Trent for back pain, stating it gets better then worse. Claimant stated his pain had increased 2X and radiated to his left hip but

6

stayed above his knee. His pain increased when he was working on vinyl flooring rather than carpeting. Claimant was diagnosed with lumbago and prescribed medication. (Tr. 410).

On July 20, 2007, Claimant returned to Dr. Trent complaining of severe back pain the day before which radiated bilateral to his legs down to the ankles. Dr. Trent found Claimant to have back pain with radiculopathy and referred him for an MRI. (Tr. 409).

On September 21, 2007, Claimant underwent an MRI which revealed mild degenerative changes involving the lumbar spine without disc herniations and grade I anterolisthesis of L5 relative to S1 secondary to bilateral pars defects. Moderate desiccation and loss of intervertebral disc space height involving the L5-S1 level was noted. A mild disc bulge and facet arthropathy resulted in mild to moderate neural foraminal stenosis was found. (Tr. 485).

On September 14, 2007, Claimant went to the Carl Albert Community Mental Health Center for up and down moods, problems with his thought processes, and difficulty focusing. (Tr. 225).

On January 2, 2008, Claimant was hospitalized at the Mental Health Center after self-reporting complaining of depression and suicidal and homicidal ideations. He reported manic and depressive episodes and a long history of substance abuse. He had used methamphetamine, marijuana, and alcohol two days prior to

7

admission. He reported difficulty with irritability and anger outbursts. He denied any audio or visual hallucinations. Claimant stated he was currently on probation and had further legal charges pending. Clamant was diagnosed with Mood Disorder, NOS, Amphetamine Abuse, Cannabis Abuse, Alcohol Abuse, Personality Disorder, NOS. His then-current GAF was 52. (Tr. 307-08).

In February, June, and September of 2008, Claimant was assessed for his chronic back pain. (Tr. 403-05).

On September 25, 2008, Claimant went to Sparks Hospital after a motor vehicle accident complaining of neck and head pain. An MRI of the same date revealed stable, mild degenerative changes involving the lumbar spine without development of disc herniations, moderate to severe bilateral neuroforaminal stenosis involving the L5-S1 level predominantly secondary to previously noted anterolisthesis. Also, Grade II anterolisthesis of L5 relative to S1 secondary to bilateral pars defects. (Tr. 444).

After an assessment on September 29, 2008, Claimant was incarcerated until January 22, 2010. (Tr. 166). On January 26, 2010, Claimant saw Dr. Trent for back pain. He was assessed with chronic back pain and prescribed medication. (Tr. 400).

On July 1, 2010, Claimant underwent a consultative examination by Dr. Mohammed Quadeer. Dr. Quadeer noted normal movements in all joints in the upper and lower limbs. No point tenderness was noted

and Claimant's grip strength was 5/5 bilaterally, strong and firm. He was able to do both gross and fine manipulation with his hands, fingertip to thumb opposition was adequate, knees showed no effusion or edema and were stable in all range of motion exercises, great toe strength was equal bilaterally. Claimant's cervical spine was non-tender with full range of motion, thoracic-lumbar spine was non-tender with full range of motion associated with muscle spasms. Straight leg raising reflex was negative bilaterally in both sitting and supine positions. Claimant's gait was safe and stable with appropriate speed. No muscle atrophy was noted and his heel/toe walking was normal with tandem gait within normal limits.

Claimant had anxiety and depression but was awake, alert and oriented X 3. His thought processes appeared normal and his recent and remote memories were intact. Dr. Quadeer assessed Claimant with lower back pain following motor vehicle accident with degenerative discs as well as bulging discs. Claimant had normal movements without pain with no muscle spasms. Anxiety and depression with bipolar depression was diagnosed 5 years prior and Claimant took medication without much help. (Tr. 334-35).

On July 20, 2010, Claimant was attended by Dr. Theresa Horton for a mental status examination. She observed Claimant to have appropriate eye contact and speech. His thought processes were

logical, organized, and goal directed. He presented with a significant auditory/visual hallucinations but only while on methamphetamines. He had a significant history of suicidal/homicidal ideation with no current thoughts or plans. His mood was predominantly depressed with brief episodes of euphoria. Dr. Horton diagnosed Claimant with Bipolar Disorder, Type II, Current Episode is Depressed, History of Amphetamine Abuse, in remission X 2 years by self report, Personality Disorder, NOS, with prominent antisocial personality traits. Dr. Horton concluded that Claimant appeared capable of understanding and remembering simple and complex instructions, but likely will have difficulty managing the tasks as they become more complex. He appeared to have considerable social problems that likely will interfere with adequate adjustment into occupational or social settings. (Tr. 345).

On October 29, 2010, Claimant was seen by Dr. Trent, noting Claimant was presenting for a blood pressure check and hepatitis C, found Claimant to have chronic headaches and chronic low back pain. (Tr. 391-93).

On June 30, 2010, Claimant was readmitted to the Carl Albert Community Mental Health Center. He presented with feelings of hopelessness, irritability and anger, anxiety, fatigue, decreased energy and motivation, and mood swings. He reported difficulties

10

in focusing. He stated he had not used drugs in 2 years and had made 14 trips to prison since age 9. He was seen outpatient through September but failed all other appointments. (Tr. 504). Claimant reported a decrease in his depression and anxiety with medication. He was diagnosed with Bipolar Disorder, Most Recent Episode, Depressed Severe without Psychotic Features, Amphetamine Abuse, in remission, Personality Disorder, NOS, and Hypertension. His GAF was estimated at 56. (Tr. 505).

On February 15, 2011, Claimant saw Dr. Trent for back pain. He reported his pain at a 6 out of 10 and worsening. He stated his symptoms were aggravated by bending, changing positions, lifting, twisting, and walking. He reported pain between his shoulder blades and into his right shoulder with increasing low back pain to both hips. (Tr. 580). Claimant continued with visits to Dr. Trent through June of 2011. (Tr. 576-79). Claimant also visited the Carl Albert Community Mental Health Center for depression and anxiety in April of 2011. (Tr. 502).

On December 28, 2010, Dr. Trent provided a form indicating he was treating Claimant for a mental condition. He also stated that the mental condition does not impose more than a minimal limitation on Claimant. (Tr. 390).

On August 10, 2010, a Psychiatric Review Technique was prepared by Dr. Cynthia Kampschaefer. She found Claimant suffered

11

from Bipolar Disorder, Type II, current episode is depressed and Personality Disorder, NOS, with prominent antisocial personal traits. (Tr. 349, 353). She found Claimant had moderate limitations in the areas of restrictions of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace and had experienced one or two episodes of decompensation of extended duration. (Tr. 356). Dr. Kampschaefer concluded Claimant "appears capable of performing simple-work related tasks with limited interaction with the public." (Tr. 358).

On the same date, Dr. Kampschaefer completed a Mental Residual Functional Capacity Assessment form on Claimant. She found he was markedly limited in the areas of the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. 360). She also determined Claimant was markedly limited in the area of the ability to interact appropriately with the general public. (Tr. 361). Dr. Kampschaefer concluded Claimant was able to perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. (Tr. 362).

On August 27, 2010, a Physical Residual Functional Assessment form was completed by Dr. Luther Woodcock. Dr. Woodcock found

12

Claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday, engage in unlimited pushing and pulling. (Tr. 365). Dr. Woodcock essentially set forth the findings by Dr. Quadeer as to Claimant's physical status. (Tr. 365-66). He concluded that "pain does not further affect the rfc." (Tr. 366).

During the administrative hearing, Claimant stated he had difficulty walking due to radiating pain. (Tr. 44). If he spends a day working, he is down a day or two. (Tr. 45-46). Sitting is reportedly painful. (Tr. 47). Claimant also testified as to debilitating depression which he treated with medication. (Tr. 51). He states he cannot deal with people on the job and really doesn't like to be around people. (Tr. 52-53).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. <u>Id</u>. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or

other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ fully considered Claimant's testimony under the relevant criteria in light of the medical record. (Tr. 17-18). In short, no objective medical evidence supports Claimant's reported level of limitation upon work-related activities. While he reported significant ambulation problems, the medical examiners in the record found no such limitations. The antisocial aspects of his mental condition were adequately and sufficiently addressed in the limitations imposed upon Claimant's RFC by the ALJ. (Tr. 17). The ALJ properly assessed Claimant's credibility in light of the medical record.

**Reliance Upon Non-Examining Physician**

Claimant also contends the ALJ improperly relied upon Dr. Woodcock's opinion to the exclusion of all other medical evidence. Dr. Woodcock's opinion is based upon the records of the examining physicians - in particular, the records of the consultative examiner, Dr. Quadeer. Claimant attempts to create an internal inconsistency in Dr. Quadeer's report but this Court does not perceive the same. Dr. Quadeer clearly concluded Claimant did not suffer from muscle spasms. The ALJ did not commit error in relying upon Dr. Woodcock's report or the supporting underlying records.

**Mental RFC**

As a final issue, Claimant contends the ALJ inappropriately rejected the opinion of Dr. Horton in favor of the report of Dr. Kampschaefer. Dr. Horton concluded Claimant would experience considerable social problems that likely will interfere with adequate adjustment into occupational or social settings. Dr. Kampschaefer found Claimant could adapt to a work situation. The ALJ afforded Dr. Horton's opinion "little weight" because of inconsistencies in her concluding opinion and the findings she made in her examination. (Tr. 21). This Court finds that the ALJ's analysis was sound and that any limitations upon Claimant's social interaction were adequately addressed in his RFC assessment.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of February, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE